UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Rhia Mayweather & Jessica Blair,<br><br>                    Plaintiffs<br><br>         v.<br><br>CVSM, LLC d/b/a Centerfolds Cabaret, et al.,<br><br>                    Defendants | Case No. 2:20-cv-01111-CDS-VCF<br><br>**Order Granting Defendants' Motion for Summary Judgment and Closing Case**<br><br>[ECF No. 63] |

This lawsuit arises out of Rhia Mayweather and Jessica Blair's employment as cocktail waitresses with defendant CVSM, LLC, d/b/a Centerfolds Cabaret. Pro se plaintiffs Mayweather and Blair allege that Centerfolds operates as a criminal enterprise involved in racketeering, fraud, and commercial sex. The defendants include CVSM, Steve Paik (the owner), and Shuan McDivitt[1] (an employee and manager at CVSM), all of whom move for summary judgment. The plaintiffs do not respond to the summary-judgment motion and appear to have abandoned prosecuting this case.[2] Despite the plaintiffs' lack of response, I nonetheless consider the merits of the defendants' motion and find that summary judgment is appropriate on all claims. So I grant the defendants' motion for summary judgment and instruct the Clerk of Court to close this case.

---

[1] It is unclear from the record whether this defendant's name is spelled "Shaun" or "Shuan," as the defendants use both. *See* ECF No. 63 at 1, 3, 23. Because "Shuan" is the name by which he is docketed in this case and because "Shuan" appears more frequently in the docket than "Shaun," I use the former name throughout this order.

[2] The last time Mayweather appeared in this case was at a July 8, 2022, hearing in front of Magistrate Judge Ferenbach. ECF No. 62. Blair did not appear at that hearing. *Id.*

## I. Background

### A. Factual allegations

Mayweather and Blair allege that the defendants used their personal information to facilitate fraud. Second Am. Compl., ECF No. 34 at 8–9, 11–12. Specifically, they allege that the defendants used the plaintiffs' social security numbers to "disguise income generated from prostitution and to force [plaintiffs] to claim income that actually went to the enterprise." *Id.* at 9, 12. They add that they incurred increased tax burdens as a result of this wrongly reported income, with Mayweather incurring "approximately $40,306.86" and Blair "approximately $8,240" in tax debts that the defendants should bear. *Id.* at 13.

Mayweather and Blair also allege that the defendants enacted facially discriminatory policies that disparately impacted female employees. *Id.* at 13–14. They allege that male hosts were able to receive tips when customers paid for VIP-room dances, but that female cocktail waitresses received tips only when customers paid for alcohol and had to tip male hosts 20% of the proceeds. *Id.* They argue that the rule was "expressly implemented to prevent female cocktail waitresses from making more money than the male hosts/managers." *Id.* at 14. They add that Centerfolds' female dancers performed sex acts on patrons, which created an environment hostile toward other female employees (including the plaintiffs). *Id.* Finally, Mayweather alleges that she complained to the defendants about these practices on April 24, 2019, and that she was fired in retaliation three weeks later on May 15, 2019. *Id.* at 15.

### B. Procedural history

On April 16, 2020, Mayweather, Blair, and two other former Centerfolds waitresses brought this suit in Nevada's Eighth Judicial District Court. ECF No. 7-1 at 2. The other two waitresses have since settled with the defendants. ECF No. 54. The defendants removed the case to federal court, ECF No. 7, and the case proceeded along the normal litigation track until the plaintiffs' attorney, Burke Huber, moved to withdraw from representation. ECF Nos. 47, 48. Magistrate Judge Ferenbach granted Huber's motions following a hearing. ECF No. 56. But

neither Mayweather nor Blair appeared at that hearing, and I then issued orders to show cause why they did not attend. ECF Nos. 57, 59. Blair did not respond to the order to show cause, so she was sanctioned. ECF No. 62. Mayweather responded via a letter to the court. ECF No. 61. The letter explained that she was in the midst of a stressful move, that Huber suddenly decided to withdraw from the case because he did not want to spend the funds to take the case through trial, and that she was "not giving up and [is] seeking new counsel." *Id.* at 1. But since Mayweather filed that letter on June 30, 2022, neither Mayweather nor Blair have filed anything on the docket. The defendants moved for summary judgment on August 15, 2022, and the deadline for the plaintiffs to respond to that motion was September 5, 2022. ECF No. 63; *see also* LR 7-2(b) (stating that the deadline to respond to a motion for summary judgment is 21 days after the service of that motion). As of the date of entry of this order, they have still not responded.

## II.     Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party

must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

However, a district court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed," *Pinder v. Empl. Develop. Dep't*, 227 F. Supp. 3d 1123, 1135 (E.D. Cal. 2017) (citing *United States v. One Piece of Real Prop., etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004)). "A local rule that requires the entry of summary judgment simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist, would be inconsistent with Rule 56, hence impermissible under Rule 83." *Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993). Thus, within the Ninth Circuit, "a federal trial court cannot grant summary judgment under the Federal Rules unless the moving party bears its burden of showing its entitlement to a judgment." *Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994); *see also White by White v. Pierce County*, 797 F.2d 812, 815 ("Even in the absence of opposing affidavits, summary judgment is inappropriate where the movant's papers are insufficient on their face.").[3]

### III.     Discussion

   *A.     The defendants are entitled to summary judgment on the plaintiffs' RICO claim.*

Nevada law permits "[a]ny person who is injured in [their] business or property by reason of any violation" of Nevada's anti-racketeering statute, NRS § 207.400, to bring a claim against "a person causing such injury." NRS § 207.470. The plaintiffs bring a civil racketeering claim against the defendants for alleged instances in which "Centerfolds Enterprise has allowed numerous sexual acts to be performed on [its] property in exchange for money and for the financial benefit of [the defendants]." ECF No. 34 at ¶ 125. The defendants argue that the

---

[3] The defendants state that their discovery requests in this case were "answered in piecemeal fashion" and that many requests were not answered at all. ECF No. 63 at 4. Consequently, the record upon which I base this order is bereft of *any* evidence provided by the plaintiffs. And the evidence provided by the defendants (including the plaintiffs' responses to requests for production and interrogatories) may seem incomplete. But, for example, "Blair answered the interrogatories served while [] Mayweather did not." *Id.* All that said, I considered all of the materials filed on the docket that may be properly considered at summary judgment in reaching my decision.

4

plaintiffs do not have standing to bring a RICO claim because they were not personally harmed by the alleged actions. ECF No. 63 at 9–10.

"[T]o recover civilly for a RICO violation, a plaintiff must establish that he has statutory standing by demonstrating '(1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was "by reason of" the RICO violation, which requires the plaintiff to establish proximate causation.'" *Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 1000 (D. Nev. 2019) (quoting *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008)).[4] "In other words, to sue under RICO, the plaintiff's injury must be directly caused by the defendant's violation of a predicate RICO act." *Allum*, 849 P.2d at 301. While the plaintiffs allege that the defendants committed predicate RICO acts of commercial sex and/or sex trafficking, ECF No. 34 at ¶ 36, they do not identify any injuries caused by those acts. The plaintiffs state that they "would not have incurred tax debt and [would not have] been forced to pay [the defendants'] taxes" but for the defendants' RICO violations, ECF No. 34 at ¶ 94, but they present no evidence creating a genuine dispute that they actually paid the defendants' taxes. For their part, the defendants argue that the plaintiffs' claims are "based upon only their own erroneous declarations and a misunderstanding of tax law." ECF No. 63 at 13.

While the Ninth Circuit has developed factors that address whether a plaintiff's injury is too remote to establish causation, *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002), I need not address those factors as the plaintiffs have not met their threshold burden to demonstrate that they were injured because of the defendants' actions. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R.

---

[4] "The Nevada Supreme Court has recognized that the Nevada 'legislature patterned Nevada RICO after' the federal RICO scheme and has therefore relied on federal case law in interpreting Nevada RICO." *Zuffa*, 361 F. Supp. 3d at 1000 n.5 (quoting *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 298 (Nev. 1993)); *see also Allum*, 849 P.2d at 299 (holding that for a plaintiff to recover under Nevada RICO, "(1) the plaintiff's injury must flow from the defendant's violation of a predicate Nevada RICO act[,] (2) the injury must be proximately caused by the defendant's violation[,] . . . and (3) the plaintiff must not have participated in the commission of the predicate act").

5

Civ. P. 56(e)). But the plaintiffs here have not demonstrated any specific facts regarding their allegedly heightened tax burden, and I thus find no triable issue as to whether they suffered injury, much less an injury resulting from the defendants' predicate RICO acts.

      B. *The defendants are entitled to summary judgment on the plaintiffs' sex discrimination claim.*

The plaintiffs bring their sex-discrimination claims under both Title VII and NRS § 613.330. Nevada looks to the federal courts for guidance in discrimination cases applying its anti-discrimination statutes. *See Pope v. Motel 6*, 144 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII . . . and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases."). Therefore, I analyze the plaintiffs' Title VII and state-law anti-discrimination claims together. *See Stewart v. SBE Entm't Grp., LLC*, 239 F. Supp. 3d 1235, 1246 n.61 (D. Nev. 2017) (explaining that a discrimination claim under NRS § 613.330 proceeds under the same analysis as that of a Title VII claim). The plaintiffs bring both hostile-work-environment and disparate-treatment claims, which I address in turn.

      1. *The plaintiffs do not present sufficient evidence supporting their hostile-work-environment claim.*

Among other things, Title VII prohibits employers from discriminating against any individual with respect to their compensation, terms, conditions, or privileges of employment on the basis of sex. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871 (9th Cir. 2001). Sexual harassment in the form of a hostile work environment constitutes sex discrimination. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). To prevail on this type of sexual harassment claim, plaintiffs must demonstrate a "pattern of ongoing and persistent harassment severe enough to alter the conditions" of their employment. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998). The workplace must be both objectively and subjectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Additionally, "even if a hostile working environment exists, an employer is only liable for failing to remedy harassment of

which it knows or should know about." *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995).

The plaintiffs argue that the defendants established a sexually hostile work environment, both in violation of Title VII and NRS § 613.310. ECF No. 34 at ¶¶ 147–55. The plaintiffs add that Centerfolds' female dancers occasionally performed sex acts on patrons during work hours in exchange for money, which created an environment that was hostile toward female employees. *Id.* at ¶¶ 147–55. Once the plaintiffs complained about this work environment, Centerfolds terminated them. *Id.* at ¶ 151. Of course, "sex acts performed on patrons during work hours in exchange for money" could, depending on the degree of "sex act," describe a spectrum of strip-club activity ranging from legal to illegal. *See, e.g., City of Las Vegas v. Eighth Jud. Dist. Ct. of State ex rel. County of Clark*, 146 P.3d 240, 249–50 (Nev. 2006) (Rose, C.J., concurring) ("Although a person of ordinary intelligence can expressly understand what constitutes 'sexual conduct' . . ., illegal touching may include, but does not necessarily include, 'sexual conduct.'"). As the defendants argue, "lap dances, the removal of clothing, and other legal, but lewd[,] actions are to be expected in a strip club." ECF No. 63 at 18. And the plaintiffs have not provided any tangible evidence that illicit sex acts were occurring at Centerfolds. Blair stated that Centerfolds had private rooms that "were illegal and provided a cover for sexual activity on [the] premise[s]." Blair Resp. to Defs.' Interrogs., ECF No. 63-3 at 4. She added that she had to enter these rooms where she "witnessed lewd acts regularly." *Id.* But this—one of the plaintiffs' responses to an interrogatory—constitutes a scintilla of evidence insufficient to defeat summary judgment. Rather, the plaintiffs must introduce some "significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 248.

Here, the plaintiffs do not provide any probative evidence that would create a genuine dispute as to whether they can meet the elements of their hostile-work-environment claim. Courts typically consider the frequency and severity of the discriminatory conduct, among other things, when evaluating whether such conduct created a hostile work environment. *See, e.g.,*

7

*Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993) (evaluating allegedly offensive conduct by examining "all the circumstances" surrounding that conduct). And without details of the events that the plaintiffs reference, I cannot evaluate whether they give rise to a claim that the workplace was either objectively or subjectively offensive.

### 2. *The plaintiffs do not present sufficient evidence for their disparate-treatment claim.*

The plaintiffs also argue that the defendants enacted facially discriminatory policies that disparately impacted female employees. ECF No. 34 at ¶¶ 95–105, 135–46. They allege that Centerfolds had a practice under which male hosts assisted customers in paying for a dancer's time, while female waitresses assisted customers in paying for alcohol. *Id.* at ¶¶ 138–41. Both sets of employees could receive tips based on these transactions, but "Centerfolds' policy and rules forced female waitresses to wait until male hosts completed their transactions first," and "main floor" waitresses were required to tip male hosts and managers 20% of their received tips. *Id.* at ¶¶ 142–45. The defendants argue that they had a nondiscriminatory justification for the policy, namely, that "paying for a performer's time before [drinks] is logical as [the performers are] the primary reason the club exists." ECF No. 63 at 19.

The plaintiffs again face—and fail to overcome—an evidentiary hurdle in trying to prove the existence of any genuine issue for trial. To state a prima facie claim of disparate treatment based on sex, the plaintiffs must demonstrate: (1) they belonged to a protected class; (2) they were qualified and satisfactorily performed their jobs; (3) they experienced adverse employment actions; and (4) similarly situated employees outside of their protected class were "treated more favorably, or [that] other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (internal quotations and citation omitted).

Both plaintiffs were female, rendering them members of a protected class based on their sex, but that is the only element of the discrimination test that both meet. Blair never alleges—and the record does not demonstrate—that she suffered an adverse employment action.

Mayweather alleges that she was fired, but Blair makes no such allegation. While Blair may have been satisfactorily performing her job, without an adverse employment action, her discrimination claim fails. As for Mayweather, the undisputed evidence demonstrates that she was not satisfactorily performing her job, and she did experience adverse employment action when she was terminated. Centerfolds sent Mayweather a termination letter on May 15, 2019, for a failure to contact management regarding Mayweather changing her work shift. ECF No. 63-8 at 1. Attached to that letter were a number of "write-ups" documenting Mayweather's instances of nonattendance at work, including a no-call, no-show absence on April 17, 2019. *Id.* at 2–5. The final straw for Mayweather's termination seems to be an incident on May 14, 2019, when Mayweather again did not call about or show up for a scheduled shift. *Id.* at 5. The incident report indicates that she had not attended work since at least April 12, 2019, and it recommends termination due to her lack of attendance. *Id.* This justification for Mayweather's termination is not contradicted or disputed by any other evidence in the record.

   Finally, while I have determined that Blair did not suffer an adverse employment action and that Mayweather was not satisfactorily performing her job, I nonetheless address the fourth element of the test for discrimination. Nothing in the record suggests that similarly situated employees who were male were treated more favorably than either plaintiff. Neither plaintiff has provided evidence probative of their allegations that male hosts were treated more favorably than female cocktail waitresses. And the defendants add that CVSM "employs both male and female hosts. Nothing about the operations of Centerfold[s] . . . is based upon the gender of any [employees]. Customers at Centerfolds pay for a dancer's time before they buy drinks because they come to the club to see the dancers." Paik Decl., ECF No. 63-1 at ¶ 11.[5] In sum, it cannot be genuinely disputed that female employees were not treated differently from similarly situated

---

[5] While Paik's declaration may be self-serving, it is nonetheless undisputed and was given under penalty of perjury. "Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007)).

male employees, that Blair did not suffer an adverse employment action, or that Mayweather was satisfactorily performing her job. Summary judgment in the defendants' favor is thus appropriate on the plaintiffs' disparate-treatment claim.

      C. *The defendants are entitled to summary judgment on the plaintiffs' improper-tip-pooling claim.*

The Fair Labor Standards Act (FLSA) prohibits an employer from "keep[ing] tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). The plaintiffs allege that Centerfolds' owners and managers forced them to pay tips to managers, supervisors, and those who customarily did not otherwise receive tips. ECF No. 34 at ¶ 158. But there is no evidence to support this claim. Paik's declaration describes Centerfolds' tipping policies and procedures at length, and Paik states that, while the plaintiffs were able to "tip out," or share some of their tips with other employees who did not receive tips, "[t]ipping out in Centerfolds was not controlled or mandated by [any of the defendants] or anyone else." ECF No. 63-1 at ¶¶ 7–8. He adds that management and other employees who do not customarily receive tips "do not participate in . . . tip pools." *Id.* at ¶ 10. Blair responded to an interrogatory asking her to identify "any instances in which management took any portion of [her] tips" with the statement to "[s]ee attached documents." ECF No. 63-3 at 7. But she did not attach—or otherwise provide—any documents that might be considered responsive to that interrogatory. ECF No. 63 at 20. Because the plaintiffs do not provide any evidence that anyone at Centerfolds forcibly retained a percentage of their tips, summary judgment is appropriate in the defendants' favor on the tip-pooling claim.

      D. *Summary judgment is appropriate in the defendants' favor on the plaintiffs' state labor law claim.*

Under Nevada law, "[a]ll uniforms or accessories distinctive as to style, color[,] or material shall be furnished, without cost, to employees by their employer. If a uniform or accessory requires a special cleaning process, and cannot be easily laundered by an employee,

such employee's employer shall clean such uniform or accessory without cost to such employee." NRS § 608.165. The plaintiffs allege that Centerfolds required them to purchase all of their uniforms and accessories required on the job. ECF No. 34 at 19–20. The defendants respond that Nevada law does not provide a private right-of-action for violations of NRS § 608.156. The defendants are correct.

The statute concerning enforcement of NRS §§ 608.005–608.195 states that the "Labor Commissioner or representative [thereof] shall cause the provisions of NRS [§] 608.005 to [§] 608.195, inclusive, and [§] 608.215 to be enforced, and upon notice from the Labor Commissioner or the representative," a district attorney, Deputy Labor Commissioner, Attorney General, or special counsel "shall prosecute the action for enforcement according to law." NRS § 608.180. Criminal and administrative penalties attach to such labor violations, but the statutory scheme does not explicitly permit civil enforcement of such violations. NRS § 608.195. The statute under which plaintiffs sue, NRS § 608.165, is clearly within the range of statutes contemplated above ("608.005 to 608.195, inclusive"). So because this court cannot identify any private right-of-action for the defendants' alleged labor violations, the defendants are entitled to summary judgment on the plaintiffs' NRS § 608.165 claim.

      E. *Summary judgment is appropriate in the defendants' favor on the plaintiffs' conspiracy claim.*

"In Nevada, an actionable civil conspiracy is defined as 'a combination of two or more persons, who by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (quoting *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610 (Nev. 1983)). The plaintiffs bring a civil conspiracy claim against Paik and McDivitt for allegedly conspiring to force them to accept tax liability on behalf of Centerfolds. ECF No. 34 at ¶¶ 167–73. The defendants respond that the plaintiffs have no evidence of such a scheme and that the tax-burden-shifting scheme alleged by plaintiffs is inconceivable. ECF No. 63 at 21.

But "[a] civil conspiracy operates to extend . . . liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer's acts." *Flowers*, 266 F. Supp. 2d at 1249 (quoting 16 Am. Jur. 2D *Conspiracy* § 57 (1998)) (internal quotation marks omitted). "While the essence of the crime of conspiracy is the agreement, the essence of civil conspiracy is damages." *Id.* (internal quotation marks and citation omitted). The damages "result from the tort underlying the conspiracy." *Id.* Here, the plaintiffs do not provide evidence of any underlying tort related to the alleged tax fraud, nor do they provide evidence of any sort of "combination" between Paik and McDivitt related to that fraud. The plaintiffs' allegations are merely conclusory statements relating to the elements of a civil conspiracy. Blair states that McDivitt lied to her about paying taxes on money she did not receive, as "the tax liability was never split and VIP waitstaff were responsible for 100%" of the taxes. ECF No. 63-3 at 6. But without Blair's tax information or any financial or accounting data from the defendants, the plaintiffs' claims are conclusory and impossible to evaluate. Summary judgment in the defendants' favor is thus appropriate on the civil-conspiracy claim.

    F. *The defendants are entitled to summary judgment on the plaintiffs' minimum-wage claims.*

The FLSA requires that employers pay employees a minimum wage of at least $7.25 per hour during any work week. 26 U.S.C. § 206(a). An employer violates this section only when an employee's total weekly wage "averaged across their total time worked" falls below the required minimum wage. *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (citing *Hensley v. Macmillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986)). This minimum-wage requirement is calculated by finding "the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *Hensley*, 786 F.3d at 357. Furthermore, Nevada law mandates that an employer shall pay wages to an employee for each hour that employee works. NRS § 608.016. Nevada courts look to the federal standards for guidance in applying Nevada's wage laws. *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 957 (Nev. 2014).

The plaintiffs allege that the defendants required them to perform work without compensation on a weekly basis, resulting in their wages falling below the statutory minimum of $7.25 per hour. ECF No. 34 at ¶¶ 176–89. Blair states that the plaintiffs were forced to network around Las Vegas on their own time, "collecting business cards as proof and submitting them to management." ECF No. 63-3 at 8. Blair adds that the "front door girls" verified the waitresses' work by keeping a list of each waitress's guest-list arrivals. *Id.* The defendants respond that the plaintiffs' accusations are unverified and that the club had no such policy requiring off-the-clock work. ECF No. 63 at 22.

Again, the lack of evidence produced by the plaintiffs dooms their claims. Unsubstantiated accusations fail to create a genuine dispute as to whether the plaintiffs were indeed required to perform work without compensation. Without further information regarding the plaintiffs' wages, the amount of work they allegedly performed without compensation, or concrete evidence of such a policy at Centerfolds, the plaintiffs cannot prove that they were either paid below federal minimum wage or unpaid for time properly worked. So I grant the defendants summary judgment on the minimum-wage claim.

### G.  *The defendants are entitled to summary judgment on the wrongful-termination claims.*[6]

An employer wrongfully terminates an employee by doing so "for reasons [that] violate public policy." *D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991). Mayweather alleges that Centerfolds wrongfully terminated her in retaliation for her complaints to management about the alleged tipping practices and discrimination. ECF No. 34 at ¶¶ 190–195. The defendants respond that Mayweather was terminated because she stopped coming to work a month before her termination date. ECF No. 63 at 23.

---

[6] The plaintiffs' second-amended complaint also lists an eighth cause of action: that former plaintiff Waller was wrongfully terminated. ECF No. 34 at ¶¶ 196–201. Waller is one of the two waitresses who previously settled with the defendants and dismissed her claims with prejudice. ECF No. 54. Because this eighth cause of action was solely brought by Waller and was already dismissed, I need not address it further.

As mentioned *supra* subsection *B*, the undisputed evidence demonstrates that Mayweather was, indeed, fired for her sporadic attendance. Centerfolds sent Mayweather a termination letter on May 15, 2019, identifying her failure to contact management about her changing her work shift. ECF No. 63-8 at 1. Attached to that letter were some "write-ups" documenting Mayweather's instances of nonattendance at work, including a no-call, no-show absence on April 17, 2019. *Id.* at 2–5. The final straw for Mayweather's termination seems to be an incident on May 14, 2019, when Mayweather again no-call, no-showed for a scheduled shift. *Id.* at 5. The incident report states that she had not attended work since at least April 12, 2019, and recommends termination due to her lack of attendance. *Id.* This justification for Mayweather's termination is not contradicted or disputed by any other evidence in the record. There is thus no basis on which I could conclude that Centerfolds' termination of Mayweather violated any public policy. So summary judgment for the defendants is appropriate on her wrongful termination claim.

### H.  *I grant the defendants summary judgment on the plaintiffs' unjust-enrichment claim.*

In Nevada, the elements of an unjust-enrichment claim are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances when it would be inequitable to retain the benefit without payment. *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1196 (D. Nev. 2010) (citing *Leasepartners Corp., Inc. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997)). An indirect benefit will support an unjust enrichment claim. *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).

The plaintiffs bring a claim for unjust enrichment in relation to (1) the defendants' alleged tax-burden-shifting scheme and (2) the defendants' withholding of compensation from the plaintiffs. ECF No. 34 at ¶¶ 202–07. They allege that the defendants attributed income to them that should have been attributed to CVSM such that the plaintiffs had to pay taxes on that income, and that the defendants failed to pay the plaintiffs for hours that they actually worked.

*Id.* While the defendants do not move for summary judgment on the plaintiffs' unjust-enrichment claim (*see generally* ECF No. 63), a court may grant summary judgment sua sponte if: (1) the pleadings and supporting documents, viewed in the light most favorable to the plaintiffs, "show that there is no genuine issue as to any material fact and that the [defendants are] entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(c), and (2) the plaintiffs received reasonable notice that the adequacy of their claims was in question. *Ward v. Stewart*, 511 F. Supp. 2d 981, 984 (D. Ariz. 2007) (citing *Verizon Del., Inc. v. Covad Comm'n Co.*, 377 F.3d 1081, 1092 (9th Cir. 2004); *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993)).

      The material facts here are undisputed: again, the plaintiffs fail to clear the evidentiary hurdle to survive summary judgment. They do not provide any evidence to support their claims beyond their own conclusory allegations. The defendants have provided *some* evidence in support of their position that they did not engage in a tax-burden-shifting scheme or fail to properly compensate the cocktail waitresses. *See* Paik Decl., ECF No. 63-1. And the plaintiffs were on notice that their claims' adequacy had been challenged, as both the motion for summary judgment (ECF No. 63) and the notice that the plaintiffs had not opposed the defendants' motion (ECF No. 64) were filed to this court's docket and served on the plaintiffs in August and September 2022, respectively. "Pro se litigants have an obligation to monitor the docket sheet to inform themselves of the entry of orders and other filings." *Adonai-Adoni v. King*, 2012 WL 3535962, at *1 (E.D. Penn. Aug. 13, 2012) (citing *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir. 2001); *Abulkhair v. Liberty Mut. Ins. Co.*, 405 F. App'x 570, 573 n.1 (3d Cir. 2011)). The plaintiffs have had more than eight months to respond to the defendants' motion and have not done so. I find that the notice to them was reasonable, and my sua sponte granting of summary judgment is therefore appropriate on their unjust-enrichment claim.

IV.     Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 63] is GRANTED**. The Clerk of Court is instructed to enter judgment accordingly and CLOSE THIS CASE.

DATED: June 5, 2023

_____
Cristina D. Silva
United States District Judge